## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| OLLAND REESE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:13-cv-00077-NT |
| | ) | |
| RANDALL LIBERTY, | ) | |
| Warden, Maine State Prison, | ) | |
| | ) | |
| Respondent | ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION

In this action, Petitioner Olland Reese seeks relief pursuant to 28 U.S.C. § 2254.
(Petition, ECF No. 1; Amended Petition, ECF No. 33.)  Following a 13-day jury trial in
Maine state court in July 2003, Petitioner was convicted of murder, and the court sentenced
him to 47 years in prison.  The Maine Law Court affirmed the conviction and the sentence.
*State v. Reese*, 2005 ME 87, ¶¶ 1-3 & n.2, 877 A.2d 1090.  In his section 2254 petition,
Petitioner asserts several claims involving alleged due process violations, ineffective
assistance of trial counsel, and ineffective assistance of post-conviction counsel following
a motion for a new trial and two state court post-conviction petitions.

After a review of the section 2254 petition, the State's request for dismissal, and the
record, I recommend the Court grant the State's request, and dismiss the petition.[1]

---

[1] Petitioner has incorporated all of his claims in the amended petition.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The jury found Petitioner guilty of intentional or knowing murder, 17-A M.R.S. § 201(1)(A), "for killing a sixteen-year-old girl in May 2002. The girl had been struck in the head with a blunt object and buried, with her wrists bound in duct tape, behind Reese's mother's home in Bowdoin." *State v. Reese*, 2013 ME 10, ¶ 1, 60 A.3d 1277.

Petitioner filed a section 2254 petition in 2013. (Petition, ECF No. 1.) This Court granted Petitioner's unopposed motion to stay the petition until Petitioner exhausted state court remedies. (Motion, ECF No. 3; Order, ECF No. 8.)

The Law Court noted, in its most recent decision in Petitioner's case, that the matter had been before the Law Court four times, on (1) the direct appeal from the judgment of conviction and discretionary appeal from the sentence; (2) a request for discretionary review of a first post-conviction decision; (3) a direct appeal from the denial of a DNA-related motion for a new trial; and (4) a discretionary review of a portion of a second post-conviction decision:

> This is the fourth time that Reese's case has been before us. In 2005, we affirmed Reese's 2003 conviction for murdering a sixteen-year-old girl. *State v. Reese*, 2005 ME 87, ¶ 1, 877 A.2d 1090; *see State v. Reese*, 2013 ME 10, ¶ 1, 60 A.3d 1277. In July 2009, we denied Reese's request for a certificate of probable cause after the trial court denied his first petition for post-conviction review. *See Reese v. State*, No. CR-06-125, 2009 WL 6631522, 2009 Me. Super. LEXIS 117 (Feb. 27, 2009). In 2013, we affirmed the trial court's denial of Reese's motion for a new trial based on DNA evidence. *Reese*, 2013 ME 10, ¶ 32, 60 A.3d 1277; *see State v. Reese*, No. CR-02-73, 2012 WL 1889249, 2012 Me. Super. LEXIS 55 (March 14, 2012).

*Reese v. State*, 2017 ME 40, ¶ 3, 157 A.3d 215. In the Law Court's fourth decision, the Court held that *Martinez v. Ryan*, 566 U.S. 1 (2012), "did not give Reese the right to challenge the effectiveness of post-conviction counsel in a subsequent post-conviction review petition." *Reese*, 2017 ME 40, ¶ 9, 157 A.3d 215. Additional procedural history is discussed below where relevant to Petitioner's section 2254 claims.

Respondent represented in its March 2017 status report that the Law Court's decision, *Reese*, 2017 ME 40, 157 A.3d 215, to affirm the dismissal of the remaining grounds at issue in Petitioner's second post-conviction petition, concluded the state court proceedings. (Status Report, ECF No. 30.) This Court removed the stay and granted Petitioner the opportunity to file an amended section 2254 petition. (Procedural Order, ECF No. 31.) Petitioner subsequently filed an amended section 2254 petition. (Amended 2254 Petition at 1.) Respondent seeks dismissal of the amended petition. (Response, ECF No. 41.)

## II.    DISCUSSION

### A. Legal Standards

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

A petition may not be granted if the petitioner does not first exhaust available state court remedies. 28 U.S.C. § 2254(b), (c).[2] "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (per curiam)) (quotation marks omitted). In *Baldwin,* the Court noted that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan,* 513 U.S. at 365–66).

---

[2] Title 28 U.S.C. § 2254(b) and (c) address exhaustion and state:

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > **(A)** the applicant has exhausted the remedies available in the courts of the State; or
> >
> > **(B) (i)** there is an absence of available State corrective process; or
> >
> > **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> **(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> **(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The Supreme Court has held that the failure to pursue available state court relief bars federal review absent a demonstration of cause for the default and prejudice to the petitioner:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[3]  The Supreme Court also noted that "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."  *Id.* at 752 (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Murray v. Giarratano*, 492 U.S. 1 (1989)).  In *Coleman*, the Court held the petitioner did not have "a constitutional right to counsel on appeal from the state habeas trial court judgment."  *Id.* at 755.

In *Martinez*, the Supreme Court recognized a "narrow exception" to *Coleman*: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9, 16.  However, the Supreme Court characterized its decision as an equitable ruling rather than a constitutional ruling.  *Id.* at 16.  Furthermore, in *Martinez*, the Supreme Court held that when the procedural default relates to post-conviction

---

[3] Procedural default is a judicial doctrine "related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition."  *Lovins v. Parker,* 712 F.3d 283, 294 (6th Cir. 2013) (citing 28 U.S.C. § 2254(b), (c)).

counsel's actions at the discretionary-review stage, rather than at the initial-review stage, of the collateral proceedings, habeas relief is not available:

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . .

*Martinez*, 566 U.S. at 16 (citations omitted). The First Circuit has held that because *Martinez* did not involve a new rule of constitutional law, *Martinez* did not apply retroactively to cases on collateral review. *Págan-San Miguel v. United States*, 736 F.3d 44, 45 (1st Cir. 2013) (per curiam) (denying the petitioner's application for leave to file a second or successive motion pursuant to 28 U.S.C. § 2255(h)(2)).

On federal habeas claims that were adjudicated on the merits in state court, the federal court may not grant relief unless (1) the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision was based on an unreasonable determination of the facts, pursuant to section 2254(d)(2).[4] *See Brumfield v. Cain*, --- U.S. ---, ---,

---

[4] Title 28 U.S.C. § 2254(d) addresses claims that were adjudicated on the merits in state court and states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

135 S. Ct. 2269, 2276 (2015) (noting that a state court's conclusion that the record included "no evidence" on an issue was reviewed under section 2254(d)(2)).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the federal constitutional standard by which claims of ineffective assistance are evaluated on the merits; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one . . . ." *Id.* at 697. The Court presumes "that counsel has 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690).

On the review of a state court decision under section 2254(d)(1), "[i]t is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson,* --- U.S. ---, ---, 133 S.Ct. 1990, 1992 (2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. Claims of ineffective assistance of counsel are thus subject

to a "'doubly deferential'" standard of review, in deference to both the state court and defense counsel. *Woods v. Etherton,* --- U.S. ---, ---, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

State court determinations of fact "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

If a petitioner's claims of ineffective assistance of counsel are based on underlying substantive claims, and the substantive "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail," and the Court need not determine whether the petitioner has demonstrated "'cause and actual prejudice.'" *Tse v. United States,* 290 F.3d 462, 465 (1st Cir. 2002) (per curiam) (quoting *United States v. Frady,* 456 U.S. 152, 167 (1982)); *see Knight v. Spencer*, 447 F.3d 6, 16 (1st Cir. 2006) (holding that the petitioner's counsel "could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that were either non-prejudicial or nonexistent").

## B. Grounds Asserted and Analysis

### 1. Alternate suspect evidence (Ground 1)

Petitioner alleges a violation of due process and related ineffective assistance of trial counsel regarding alternate suspect evidence. (Amended 2254 Petition at 10 & n.1; Reply, ECF No. 49 at 8-9.) He contends that after a taxi driver testified at trial that he had driven a man and a woman to the defendant's residence and that the passengers had discussed going to Florida (*Reese*, No. CR-02-73, Trial Tr. at 229, 238, 240), counsel should have offered, and the court should have admitted, the testimony of alleged alternate suspect Chris Brawn and his partner, Megan Cochran, to establish that they had discussed plans to go to Florida at the time of the crime.[5] (Reply at 9.)

---

[5] In Petitioner's section 2254 petition, he alleges Chris Brawn was an alternate suspect, and he identifies Megan Cochran as Brawn's girlfriend. (Reply, ECF No. 49 at 9.) At trial, Petitioner alleged that Brawn, Cochran, and a third person not at issue in Petitioner's section 2254 petition were alternate suspects. *State v. Reese*, 2005 ME 87, ¶ 4-5, 877 A.2d 1090.

The State moved prior to trial to exclude alternate suspect evidence. *Id.* ¶ 4. The Law Court described Petitioner's argument and the evidence regarding Brawn, who had been indicted for raping the victim in Petitioner's criminal case:

> Reese argued that because Brawn had been indicted for raping [the victim], he had a motive to kill her, and, indeed, the indictment was dismissed after her death. Reese also offered Alicia Brewer, who would testify that [the victim] hid from Brawn when she saw him shopping the day before she disappeared. Reese argued that this shopping encounter provided Brawn with sufficient opportunity to follow and kill [the victim]. Additionally, Reese offered that [], the victim's stepsister, would testify that Brawn's girlfriend, Megan Cochran, said that she wanted to beat [the victim] to death. Reese argued that Cochran's threat not only makes her an alternative suspect, but also points to Brawn as an alternative suspect.
>
> . . . .
>
> The court . . . reserved decision on the evidence relating to Brawn for trial. At trial, Reese renewed his motion to admit alternative suspect evidence concerning Brawn. The court stated that it wanted to limit the evidence to avoid a trial within a trial on the alternative suspect issue. The parties eventually agreed that if the Brawn indictment, its dismissal, and Brewer's testimony were admitted, further court papers regarding Brawn would not

Petitioner challenges the Law Court's determination that the trial court did not err or abuse its discretion when it excluded, as speculative, evidence of Brawn's whereabouts on the weekend the victim disappeared. *Reese*, 2005 ME 87, ¶ 8, 877 A.2d 1090. Petitioner contends the decision was both an unreasonable application of *Chambers v. Mississippi*, 410 U.S. 284 (1973), and an unreasonable determination of the facts. (Reply at 9.)

Petitioner's due process claim is procedurally defaulted because he made no offer of proof after the trial court's ruling to exclude evidence of Brawn's whereabouts on the weekend the victim disappeared. *Reese*, 2005 ME 87, ¶ 8, 877 A.2d 1090. Furthermore, because the state court did not violate Petitioner's due process rights, the claim fails on the merits. In *O'Brien v. Marshall*, 453 F.3d 13 (1st Cir. 2006), while acknowledging that in *Chambers*, the Supreme Court determined that a defendant must be allowed to offer evidence that someone confessed to the crime to three different individuals on three different occasions, the First Circuit described the evidence in *Chambers* as "very reliable," and noted that "federal rights are violated only when state rules or particular results are shocking or indefensible. The key Supreme Court cases overturning the exclusion of

---

come in. Reese made it clear, however, that by agreeing to this, he was not waiving his right to offer other testimony supporting his alternative suspect theory.

. . . .

The court . . . excluded all further inquiry into Brawn's whereabouts on the weekend [the victim] disappeared on the basis that it was speculative. Reese did not make further offers of proof and did not attempt to present Cochran as a witness.

*Id.* ¶¶ 4-8.

exculpatory evidence bear out the view that a kind of *ad hoc* balancing is at work but the threshold is high." *Id.* at 19-20.

Here, none of Petitioner's section 2254 allegations or supporting materials (ECF No. 49 at 9; ECF No. 49-1 at 4, 11) is sufficient to satisfy the threshold for a due process claim, or otherwise to entitle Petitioner to relief under section 2254(d), based on the state court's ruling on evidence of Brawn's whereabouts. The court's ruling to exclude the evidence as speculative, and its concern that further evidence regarding Brawn risked a trial within a trial on the alternate suspect issue, was neither shocking nor indefensible.[6] *See O'Brien*, 453 F.3d at 19-20.

### 2. Sentencing (Ground 2)

Petitioner alleges his due process rights were violated at sentencing because the trial testimony of the State's medical examiner did not support the court's sentencing finding that the victim struggled and suffered.[7] (Amended 2254 Petition at 11-12; Reply at 9-10.)

---

[6] Petitioner also asserts a related claim of ineffective assistance of trial counsel. (Amended 2254 Petition at 10 n.1.) The record reflects that Petitioner's first state court post-conviction petition initially included a claim of ineffective assistance of trial counsel regarding the alternate suspect evidence: "Petitioner's trial counsel failed to gather or present alternative suspect evidence at trial, or to make a sufficient showing to allow admission of such evidence . . . ." (*Reese v. State*, No. CR-06-125, Amended Petition at 3.) However, the claim was omitted in the revised amended petition, and at the evidentiary hearing, post-conviction counsel confirmed that the revised amended petition was the operative petition. (*Reese*, No. CR-06-125, Hearing Tr. at 5.) Petitioner did not raise the issue in his request for discretionary review. (*Reese v. State*, No. Sag-09-176, Memorandum of Law in Support of Request for Certificate of Probable Cause (ECF No. 1-3).) The claim is therefore procedurally defaulted, *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004), and barred *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In ground 1 of Petitioner's second post-conviction petition, he alleged counsel in the first post-conviction proceeding was ineffective based on the failure to pursue "all non-frivolous issues of trial counsel's ineffectiveness." (*Reese v. State*, No. CR-13-21, Motion to Amend Petition ("Amended Petition") at 1.) Ground 4 of Petitioner's section 2254 petition addresses the claim.

[7] In addition to the due process claim, Petitioner's section 2254 claim also contends the state court misapplied sentencing factors under state law, based on the same grounds he asserts in the due process

The sentencing court considered that the victim's wrists had been bound in duct tape:

> There is the matter of the duct-tape. I have to say that I have to take that into account. And it is the only evidence that there was a struggle or a moment when Ms. Green remained alive, or that there was alternatively some moment when she was put in the power of the defendant before being hit, [whichever] of those it was. That was, in my view, a factor which increases substantially the nature and seriousness of this crime.

(Sentencing Tr. at 79.)[8] The sentencing court also found: "If duct-tape was necessary, there is – a strong inference can be drawn that she either knew something bad was going to happen to her and therefore suffered or was alive after being hit and therefore suffered." (*Id.* at 85.)

Petitioner raised the issue in the consolidated sentence review and appeal, citing *State v. Hewey*, 622 A.2d 1151 (Me. 1993). (*State v. Reese*, No. Sag-04-11, Appellate Brief at 45-48.) The Law Court noted Petitioner's sentencing argument and summarily concluded it lacked merit. *Reese*, 2005 ME 87 at ¶ 1 n.2. Although Petitioner did not discuss the due process issue explicitly, the Law Court has recognized that an argument under *Hewey* implicates due process. *See State v. Grindle*, 2008 ME 38, ¶ 18, 942 A.2d 673 ("Courts have broad discretion in determining what information to consider in sentencing;

---

claim. (Amended 2254 Petition at 11.) Petitioner is not entitled to habeas review of a state court determination of a state law issue. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

[8] The sentencing transcript caption reflects that the sentencing hearing was transcribed as part of the Law Court's Sentence Review Panel proceeding. (*State v. Reese*, No. SRP-04-07.) The Sentence Review Panel granted review and consolidated the sentence review and the appeal. (*Reese*, No. SRP-04-07, Order (Apr. 25, 2004).)

they are limited only by the due process requirement that such information must be 'factually reliable and relevant.'") (citing *Hewey*, 622 A.2d at 1154).

The record supports the trial court's findings. In support of his contention that the record lacked evidence of the victim's suffering, Petitioner points to testimony of the State's medical examiner that there was "minimal" or "very light" hemorrhaging beneath the victim's skull. (*Reese*, No. CR-02-73, Trial Tr. at 1574, 1615.) The evidence at trial, however, does not support a link between the amount of hemorrhaging and the amount of suffering. As the medical examiner cautioned when discussing the significance of a finding of minimal hemorrhaging:

> It is a negative finding, and it's dangerous in interpreting negative findings. The person may have survived a period of time after the infliction of the wounds; however, the lack of hemorrhage in those locations may also indicate the person had died fairly quickly after the wounds occurred.

(*Id.* at 1574-75.)

Given the use of duct tape on the victim, the sentencing court reasonably found that the victim either remained alive for some period of time after the injury, or that she "was put in the power of the defendant before being hit." (Sentencing Tr. at 79.) Accordingly, Petitioner is not entitled to relief under section 2254(d)(2). Because Petitioner's due process argument is apparently based on his section 2254(d)(2) claim regarding the evidence (Reply at 9-10), Petitioner's due process argument also fails under section 2254(d)(1).

### 3. DNA evidence at trial (Ground 3)

In ground 3 of the section 2254 petition, Petitioner contends he is entitled to relief under section 2254(d), because the state court's factual findings and legal conclusions on Petitioner's claim of ineffective assistance of trial counsel regarding DNA evidence were unreasonable. Petitioner alleges trial counsel failed to investigate or offer evidence, including expert testimony, concerning a trace amount of male DNA found on the duct tape used in the crime. (Amended 2254 Petition at 13-14; Reply at 11.)

In two grounds of the revised amended petition in the first state court post-conviction proceeding, Petitioner alleged that trial counsel's failure to retain a DNA expert and offer expert testimony constituted ineffective assistance. (*Reese*, No. CR-06-125, Revised Amended Petition at 1-2.) The state court characterized Petitioner's arguments as follows: "Both of those grounds allege that Reese's trial counsel failed to adequately investigate and offer forensic evidence and expert testimony with respect to a piece of duct tape that was found wrapped around [the victim's] wrists when her body was discovered."[9] (*Reese*, No. CR-06-125, Order (Feb. 27, 2009) at 1.) The trial court denied post-conviction relief. (*Id.* at 12.)

Petitioner raised the issue in his memorandum in support of discretionary review. (*Reese v. State*, No. Sag-09-176, Memorandum in Support of Request for Certificate of

---

[9] Petitioner's revised amended petition also included a third claim, which was based on alleged ineffective assistance based on the failure to request a continuance of the trial; the court noted the third claim had been withdrawn. (*Reese*, No. CR-06-125, Order (Feb. 27, 2009) at 1.) The third claim is not at issue in Petitioner's section 2254 petition.

Probable Cause.)  The Law Court denied discretionary review.  (*Reese*, No. Sag-09-176, Order (Me. July 2, 2009).)[10]

In its February 2009 order denying relief, the trial court reviewed the relevant evidence from the July 2003 trial:

> A partial finger or hand print was found on the inside (sticky side) of the fifth wrap of duct tape, and that print was subjected to painstaking analysis by [the State's fingerprint technician].  She determined that the print did not match Olland Reese.  It also did not match persons whom Reese's trial counsel had proposed as alternate suspects.  The State argued at trial that the most probable source of the print was [the victim].  However, the State was unable to locate a set of [the victim's] prints for comparison, and her body was too badly decomposed to yield any finger or hand prints.
>
> Thereafter, the area of the tape where the partial print was found was subjected to DNA analysis by [the State's forensic analyst].  However, the only identified DNA that was found was that of . . . the fingerprint technician.
>
> At trial the defense highlighted this instance of contamination and argued generally that this rendered all of the State's DNA and blood evidence unreliable.

(*Reese*, No. 06-125, Order (Feb. 27, 2009) at 4.)  The court noted that Petitioner did not propose the type of DNA testing at issue in his section 2254 petition ("YSTR" or "Y-STR" testing) until November 2007, which was more than four years after the trial.[11]  (*Id.* at 6, 9.)  Petitioner's post-conviction expert report noted "'changes in the technology of DNA

---

[10] Because the Law Court concluded that no further hearing or other action was needed, the final reasoned analysis of the state court, for purposes of federal review, is the order of the trial court on post-conviction review.  (*Reese*, No. 06-125, Order (Feb. 27, 2009).)  *See Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *Hittson v. Chatman,* 135 S.Ct. 2126 (2015) (Ginsburg, J., concurring in denial of certiorari).

[11]  The court described YSTR testing as "DNA testing that only analyzes Y (male) chromosomes." (*Reese*, No. CR-06-125, Order (Feb. 27, 2009) at 6.)

analysis since 2003.'"  (*Id.* at 5 & n.3.)  In February 2008, YSTR testing was ordered with Petitioner's consent.  (*Id.* at 6-7.)  "The result of that test was that there was male DNA present, and further analysis excluded Olland Reese as the donor of that material."  (*Id.*)

The court found that before trial, counsel retained an expert who recommended a review of the State's DNA analysis and data.  (*Id.*)  The court noted the expert was the director of the Henry Lee Institute of Forensic Science, which was affiliated with the University of New Haven, in Connecticut.  (*Id.* at 6.)  The expert stated that the Henry Lee Institute could provide DNA expertise.  (*Id.* at 7.)  The expert visited the state lab and requested laboratory bench notes and additional materials related to the DNA testing; counsel conveyed the request to the prosecutor; and the state lab sent the requested materials, including electropherograms, to the expert.  (*Id.*)

The court observed: "Petitioner is essentially arguing that trial counsel was ineffective in not having taken steps that would have led to YSTR testing prior to trial." (*Id.* at 9.)  The court concluded counsel's performance was not substandard, because "YSTR testing was still in its infancy at the time of trial."  (*Id.* at 9.)  "At the time of Reese's trial, YSTR testing was not an obvious avenue even to forensic experts, let alone to ordinary defense counsel."  (*Id.*)  The court's conclusion that trial counsel's performance was not substandard was also based on the lack of evidence to suggest that the defense expert had suggested YSTR testing prior to trial, and on the expert's conclusion, expressed to counsel, that the State lab's analytical work "'was thoroughly documented and conducted with appropriate scientific procedures.'"  (*Id.* at 10.)  The court concluded:  "It was not ineffective for trial counsel, faced with complicated scientific issues in an evolving

field such as DNA, to consult forensic experts and rely on them to identify any viable scientific avenues of inquiry. No evidence exists that [counsel] was ever given any reason to consider the use of YSTR testing." (*Id.*)

The court added:

> There is one subsidiary issue that emerged during the post conviction hearing. The electropherogram results obtained during the State's DNA analysis of the extract from Item 31F did show an indication that Item 31F contained a trace amount of male DNA based on what [the State's forensic analyst] described during the post-conviction proceeding as "a very small Y peak." However, this amount was well below the threshold necessary for the Crime Lab to report any result and was not mentioned in the Lab's DNA report on Item 31F.

(*Id.*) (record citations omitted).[12] The court observed that the "possible Y peak" appeared on the electropherogram that was sent to Petitioner's expert before trial; however, the court found that counsel was not alerted to the male DNA, and counsel "could not reasonably have been expected to spot the possible Y peak or understand its significance if he had reviewed the electropherogram." (*Id.* at 11.) The court concluded: "On issues of this nature, defense counsel did not fall below the required standard of performance in relying on review by the experts he had retained with the expectation that, if the electropherogram exhibited any anomalies, the experts would flag them." (*Id.*)

Petitioner has failed to demonstrate the court's post-conviction factual findings were unreasonable under section 2254(d)(2). In particular, the record supports the findings that counsel and the expert had the test results that reflected the presence of a trace amount of

---

[12] State's Trial Exhibit 31 was identified as the duct tape that had been wrapped around the victim's wrists, and Item 31F was a portion of the duct tape where the print was found. (*State v. Reese*, No. CR-02-73, Trial Tr. at 1420-22, 1873; *Reese*, No. 06-125, Order (Feb. 27, 2009) at 4, 6.)

male DNA, and that based upon the expert's assessment of the state lab and the expert's recommendations, counsel's decisions were reasonable. Petitioner's section 2254(d)(1) argument fails as well, because Petitioner has not demonstrated that the court's conclusion that counsel's performance was not substandard was an unreasonable application of *Strickland*. Specifically, it was not unreasonable for the court to conclude that counsel could not reasonably have been expected to identify the indicator of a trace amount of male DNA in the data, when the defense expert did not alert counsel, and the amount found was not mentioned in the report. (*Id.* at 10-11 & n.10.)

Because the court concluded counsel's performance was not substandard, the court did not reach the issue of prejudice. (*Id.* at 11.) The decision not to reach the issue of prejudice was not an unreasonable application of *Strickland*. *See Strickland*, 466 U.S. at 697.

**4. Claims raised in the second post-conviction proceeding regarding counsel's performance in the first post-conviction proceeding (Grounds 4-8, 16)**

In grounds 4-8 and ground 16 of the section 2254 petition (Amended 2254 Petition at 16-24, 40-41; Reply at 11-15, 31), Petitioner challenges the dismissal of claims concerning counsel's performance in the first post-conviction proceeding. (*Reese v. State*, No. CR-13-21, Docket Record; Motion to Amend Petition ("Amended Petition") at 1-4.)

The Law Court affirmed the dismissal of the relevant claims, which were asserted in grounds 1-5 of the second state court petition. *Reese*, 2017 ME 40, ¶ 1, 157 A.3d 215. The Law Court reasoned that because the Supreme Court's decision in *Martinez* is not

retroactive, it "had no effect on Reese's first petition, which was denied more than two years before *Martinez* was decided." *Id.*

The Law Court's decision was not contrary to or an unreasonable application of *Martinez*, which did not establish a new rule of constitutional law, *see Martinez*, 566 U.S. at 16, and which is not retroactively applicable to cases on collateral review, *see Págan-San Miguel*, 736 F.3d at 45. Petitioner's 2254 claims therefore fail.

### 5. Due process and ineffective assistance claims based on the motion for a new trial (Grounds 9-15)

In grounds 9-12 of the section 2254 petition, Petitioner alleges due process violations based on the Law Court's decision to affirm the denial of his motion for a new trial. (Amended 2254 Petition at 25-33; Reply at 15-27.) In grounds 13 and 14 of the section 2254 petition, Petitioner alleges ineffective assistance of counsel regarding the motion for a new trial. (Amended 2254 Petition at 34-37; Reply at 27-30.) In ground 15, Petitioner asserts a confrontation clause claim that appears to rely on the same allegations as in ground 13. (Amended 2254 Petition at 38; Reply at 30-31.)

In August 2008, while Petitioner's first state court post-conviction petition was pending, he filed a motion for a new trial. (*Reese*, No. CR-02-73, Docket Record at 21-22.) The trial court held an evidentiary hearing on the motion in October 2011, and in March 2012, the court denied the motion.[13] (*Reese*, No. CR-02-73, Docket Record at 24-25, Order (Mar. 15, 2012) at 3, 22.)

---

[13] The docket record regarding the motion for a new trial contains an order that states the parties agreed that the evidentiary hearing to be held in October 2008 would be limited to the post-conviction claims at issue in *Reese*, No. CR-06-125, and the motion for a new trial would be scheduled separately, but relevant testimony from the post-conviction hearing could be offered in connection with the motion for a new trial

The Law Court affirmed. *Reese*, 2013 ME 10, ¶ 2, 60 A.3d 1277. The Law Court rejected Petitioner's arguments "that the court erred in reaching findings regarding the possible contamination of the clipping of duct tape that was tested and subjected to updated methods of DNA analysis," and that the court "misapplied the relevant statute, 15 M.R.S. § 2138(10), in assessing how the new DNA evidence could affect the outcome of the trial." *Id.* The Law Court noted that the trial court had denied the motion "[b]ased on the reports of test results, the testimony offered in connection with Reese's motion, and the voluminous trial evidence . . . ." *Id.* ¶ 17.

Petitioner's second state court post-conviction petition set forth, in grounds 6-16, claims regarding the motion for a new trial.[14] (*Reese*, No. CR-13-21, Amended Petition at 4-12.) The trial court denied relief. (*Reese*, No. CR-13-21, Order (Dec. 11, 2015) at 13.) The Law Court denied discretionary review of the claims regarding the motion for a new trial.[15]

In ground 9 of the section 2254 petition, Petitioner alleges his due process rights were violated when the state court denied his motion for a new trial; Petitioner contends the evidence supported a grant of the motion. (Amended 2254 Petition at 25-26; Reply at 15-17.)

---

"without the need to recall any witnesses. However, this will not preclude any party from recalling any witness and offering additional testimony." (*Reese*, No. CR-02-73, Docket Record at 21-22.)

[14] As discussed above, grounds 1-5 of Petitioner's second state court post-conviction petition relate to post-conviction counsel's performance in the first post-conviction proceeding.

[15] As discussed above, the Law Court's grant of a certificate of probable cause was limited to a review of the post-conviction court's application of *Martinez v. Ryan*, 566 U.S. 1 (2012). (*Reese v. State*, No. Sag-16-5, Order Granting Certificate of Probable Cause (Me. June 28, 2016).)

Although Petitioner did not contend in state court that his due process rights were violated by the denial of the motion for a new trial, he made essentially the same underlying evidentiary argument as he asserts in ground 9 of the section 2254 petition. *Reese*, 2013 ME 10 ¶ 2, 60 A.3d 1277. The section 2254 claim fails on the merits, because the Law Court's conclusion that there was evidentiary support for the trial court's findings was not unreasonable.[16] *Id.* ¶¶ 26-27.

In ground 9, Petitioner additionally challenges the Law Court's application of 15 M.R.S. § 2138, which is the statute that governs a DNA-related motion for a new trial.[17]

---

[16] The Law Court stated:

> The court found that the duct tape could have been contaminated after the commission of the crime because the smooth side of the fifth layer of tape was *not* covered by an additional layer of tape. The court acknowledged the latent print analyst's trial testimony that the print was found on the *adhesive* side of the fifth layer on a portion of the tape, which was not exposed until the analyst peeled the layers apart, but found that contamination from the smooth side of the fifth layer was possible. Although the DNA contamination of the smooth side would have had to correspond to the location of the print on the adhesive side of the tape, the court's finding that this contamination was *possible* is not clearly erroneous. Such a small, trace amount of DNA would not necessarily be present throughout the tape, and there was some risk of such minor contamination in the field given that numerous investigators were present at the burial site when the body was discovered, photographed, and removed.

> The court's ultimate finding has its strongest support, however, in the alternative possibility of contamination in the laboratory. The sample taken from the tape is the only piece of evidence that was already known to have been contaminated with the latent print analyst's DNA, and additional contamination could have resulted from the print analyst's admitted reuse of a fingerprint brush that had been used to dust prints in other cases or from other contaminants in the lab at that time. This type of contamination would be consistent with the absence of DNA evidence on all other portions of the tape because the portion with the print was the only area that was thoroughly examined, dusted, clipped, and analyzed.

*Reese*, 2013 ME 10, ¶¶ 26-27, 60 A.3d 1277.

[17] The Law Court held:

> The prospect of an alternative suspect does not preclude the possibility that male DNA resulted from lab contamination given that some contamination of this particular piece of

(Amended 2254 Petition at 25-26.)  The section 2254 claim fails because it requests federal habeas review of a state court determination of a state law issue.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Garuti v. Roden*, 733 F.3d 18, 24 (1st Cir. 2013) (holding that a Massachusetts criminal procedure rule that permits a motion for a new trial to be denied without a hearing, if the motion and affidavits do not raise a substantial issue, was reasonable on its face and as applied, and did not violate due process).

In grounds 10-12, Petitioner alleges the State's DNA analyst and the prosecution suppressed evidence prior to the trial, and the prosecution knowingly introduced false testimony.  (Amended 2254 Petition at 27-32.)  Specifically, Petitioner alleges the DNA analyst "failed to indicate the presence" of male DNA (*id.* at 28 (ground 10)); the State's prosecutors "knew or should have known" of the male DNA (*id.* at 30 (ground 11)); and the DNA analyst falsely testified that she did not cut the fingerprint from Item 31F, contrary to her prior testimony that she did cut the print from Item 31F (*id.* at 32 (ground 12)).

---

evidence had already been discovered.  Accordingly, the court did not err in reaching its ultimate finding that the evidence failed to establish, by clear and convincing evidence, that "*[o]nly* the perpetrator of the crime or crimes for which the person was convicted could be the source of the evidence."

*Id.* ¶ 28 (quoting 15 M.R.S. § 2138(10)(A), (B) (emphasis added)).  The Law Court concluded the trial court "did not act outside the confines of the statute in observing that the other circumstantial evidence of Reese's involvement in the crime buttresses the hypothesis that contamination, rather than an alternative perpetrator, could explain the contribution of a trace amount of male DNA to the sample."  *Id.* ¶ 29.  The Law Court also concluded:

Having found that the trace amount of male DNA in the tested sample could have come from someone other than the perpetrator of the crime, the court properly proceeded to address the motion for a new trial under the standard set forth in section 2138(10)(C), which calls for a new trial if, among other requirements, the newly discovered evidence "would make it probable that a different verdict would result upon a new trial."

*Id.* ¶ 30 (quoting 15 M.R.S. § 2138(10)(C)(1)).

The Law Court rejected Petitioner's due process arguments.  *Reese*, 2013 ME 10, ¶ 2 n.2, 60 A.3d 1277.  Petitioner's section 2254 claims fail on the merits, because the state court factual findings contradict Petitioner's section 2254 allegations.

Regarding the allegations in grounds 10 and 11, the Law Court noted that "information regarding the possible presence of male DNA was included in the documents that the State shared with the defense expert."  *Reese*, 2013 ME 10, ¶ 7, 60 A.3d 1277. "[W]here the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the Government does not commit a Brady violation by not bringing the evidence to the attention of the defense."[18]  *United States v. Brown*, 582 F.2d 197, 200 (2d Cir. 1978).  Grounds 10 and 11 therefore fail.

As to ground 12, in which Petitioner alleges the DNA analyst falsely testified she did not cut the duct tape (Amended 2254 Petition at 32), the trial court first acknowledged, that, in the context of a series of leading questions, the analyst testified that she had not cut the duct tape.  (*Reese*, No. CR-13-21, Order (Dec. 11, 2015) at 4-5.)  Regardless of the testimony or any confusion regarding the testimony, the court did not rely on the testimony in its decision to deny the motion for a new trial; rather, the court found, based on the DNA analyst's prior testimony, that she did cut the duct tape.  (*Id.* at 5.)  Similarly, the Law Court noted there was evidence that the DNA analyst "clipped the duct tape for DNA testing." *Reese*, 2013 ME 10, ¶ 2 n.2, 60 A.3d 1277.  Petitioner's section 2254 allegation that relief

---

[18] *Brady v. Maryland*, 373 U.S. 83 (1963).

is warranted because the analyst falsely testified is thus not supported by the record. Ground 12 therefore fails.

In grounds 13 and 14 of the section 2254 petition, Petitioner claims ineffective assistance of counsel in the motion for a new trial. (Amended 2254 Petition at 34-37; Reply at 27-30.) A petitioner has no constitutional right to counsel in a post-conviction proceeding. *Coleman*, 501 U.S. at 752. The limited exception in *Martinez* does not apply to Petitioner's claims of ineffective assistance in the motion for a new trial, which the Law Court has characterized as a post-conviction motion. *See Martinez*, 566 U.S. at 16; *Cookson v. State*, 2011 ME 53, ¶ 7, 17 A.3d 1208. Furthermore, if grounds 13 and 14 were not precluded under *Martinez* and *Coleman*, they would nevertheless fail because the state court findings and decisions on which the claims are based were not unreasonable under section 2254(d).

Petitioner contends in ground 13 that counsel was ineffective because he failed to call the State's fingerprint analyst to testify at the motion for a new trial regarding the laboratory's policies and procedures. (Amended 2254 Petition at 34-35.)

In the second post-conviction proceeding, Petitioner filed a motion for reconsideration of the trial court's prior ruling that the fingerprint analyst, who had testified at trial and at the first post-conviction hearing, could not be brought back for further questioning in the hearing on the motion for a new trial. (*Reese*, No. 13-21, Order (Dec. 11, 2015) at 12-13.) The trial court denied the motion for reconsideration, and a related ineffective assistance claim, because Petitioner had not offered any legitimate basis for further questioning of the witness, and the witness's prior testimony supported

the possibility that the trace amount of male DNA found was due to contamination. (*Id.* at 12-13 & n.11.) Petitioner raised the issue in his unsuccessful request for discretionary review. (*Reese*, No. Sag-16-5, Pro Se Memorandum in Support of Request for Certificate of Probable Cause at 3-4.)

Testimony from the State's fingerprint analyst regarding lab policies and procedures, had the testimony been offered, would not have negated the finding that the fingerprint analyst "admitted reuse of a fingerprint brush that had been used to dust prints in other cases or from other contaminants in the lab at that time." *Reese*, 2013 ME 10, ¶ 27, 60 A.3d 1277. The finding was not unreasonable under section 2254(d)(2). Therefore, the trial court's decision to deny the related ineffective assistance claim was not an unreasonable application of *Strickland*, pursuant to section 2254(d)(1). *See Tse,* 290 F.3d at 465; *Knight*, 447 F.3d at 16.

Petitioner further alleges, in ground 14, that the state court unreasonably found the fifth layer of duct tape was exposed to possible contamination. (Amended 2254 Petition at 37.) The Law Court noted:

> The court found that contamination could . . . have occurred because the smooth side of the fifth layer of tape had not been covered by another layer of tape, creating a potential that cells were deposited on the exterior of the tape that the DNA analyst eventually clipped. The photograph upon which the court relied for its finding shows that the smooth side of the tape was exposed.

*Reese*, 2013 ME 10, ¶ 18, 60 A.3d 1277 (discussing 15 M.R.S. § 2138(10)(A), (B), and concluding Petitioner had failed to produce clear and convincing evidence that only the perpetrator could have been the source of the evidence). The finding was not unreasonable

under section 2254(d)(2), and thus, the trial court's decision to deny the related claim of ineffective assistance, was not an unreasonable application of *Strickland*, pursuant to section 2254(d)(1). *See Tse,* 290 F.3d at 465; *Knight*, 447 F.3d at 16.

Ground 15 is based on the same allegations as ground 13, i.e., that Petitioner should have been permitted to question the State's fingerprint analyst regarding lab policies and procedures. (Amended 2254 Petition at 34-35, 38.) In ground 15, Petitioner contends his Sixth Amendment right to confront the witness was violated. (*Id.* at 38; Reply at 30-31.) The claim fails because Petitioner was permitted to confront the fingerprint analyst at trial and in the first post-conviction proceeding.[19] *See Michigan v. Bryant*, 562 U.S. 344, 354 (2011) (discussing *Crawford v. Washington*, 541 U.S. 36, 68 (2004), in which the accused had not had an opportunity to cross-examine testimonial statements of an accuser). In addition, as explained in connection with ground 13, testimony about lab policies and procedures would not have negated or undermined the fingerprint analyst's prior testimony regarding contamination in the lab. Therefore, Petitioner is not entitled to relief.

### 6. Cumulative error

Petitioner alleges prejudice from cumulative errors. (Amended 2254 Petition at 10 n.1.) For the reasons discussed above, Petitioner has failed to demonstrate he is

---

[19] Arguably, Petitioner failed to exhaust the state court remedies on ground 15 of the section 2254 petition. The trial court noted, in its discussion of the related ineffective assistance claim in Petitioner's second post-conviction petition, that counsel testified he could not recall why he had not sought testimony from the State's fingerprint analyst in the motion for a new trial. (*Reese*, No. 13-21, Order (Dec. 11, 2015) at 6.) Thus, the issue was not raised in the hearing on the motion for a new trial. Similarly, Petitioner did not raise a confrontation clause issue in his brief on appeal from the denial of the motion for a new trial. (*State v. Reese*, No. Sag-12-162, Appellant's Brief.)

entitled to relief under section 2254(d) regarding any of the claims. Petitioner, therefore, cannot demonstrate prejudice based on cumulative errors. *See Knight*, 447 F.3d at 18 (noting that where there are no individual errors, there is no cumulative error).

## III.  CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 16th day of January, 2018.